PETERS and others *against* GOODRICH :

IN ERROR.

*October* 16.

On a bill for foreclosure, the jurisdiction of the court is determined by the value of the mortgaged premises.

In a plea in abatement to such bill, for want of jurisdiction, it is not sufficient to state, that the value of " the matter or thing in demand" exceeded, or fell short of, the requisite sum, but the value of the mortgaged premises must be specifically alleged.

Where the date and name of the payee of a note, mentioned in the condition of a mortgage deed, were misdescribed through mistake, it was held, in a bill for foreclosure, stating such mistake, that it might be corrected, not only as between the parties to the deed, but as between the mortgagor and a subsequent mortgagee with notice.

Whatever is sufficient to put a person on enquiry, is considered in equity as conveying notice.

The recording of a mortgage deed affords constructive notice of its contents to subsequent incumbrancers.

A mortgage was given, on the 15th of *September,* 1813, as security for the indorsement of a note, dated *July* 27th, 1813, for 400 dollars, payable ninety days after date, at the *Middletown* bank, and there discounted for the accommodation of the maker. When that note became due, it was taken up, the indorser paying 83 dollars, and a new note, bearing the same names, was given for the balance. On the 3rd of *September,* 1814, the same land was mortgaged to another person. On the 6th of *September,* 1814, the first mortgagee indorsed a note for 110 dollars, part of the original debt of 400 dollars at the bank, which he was afterwards obliged to pay. Held, that the indemnity secured by the first mortgage being precisely co-extensive with the liability of the mortgagee as indorser, his lien extended only to the first note, and as to subsequent advancements, he was only a general creditor.

THIS was a bill in chancery, brought originally to the county court in *Middlesex* county, praying for a foreclosure of mortgaged premises. The bill stated, that on the 27th of *Ju-*

*ly*, 1813, *John Curtiss* made his promissory note, of that date, for the sum of 400 dollars, payable in ninety days, at the *Middletown* bank, to *C.* and *D. Churchill*, or order, and by them indorsed ; that the plaintiff, on the same day, at the request of *Curtiss*, and for his accommodation and benefit, and to enable him to procure the note to be received and discounted by the *Middletown* bank, indorsed it, after the indorsement by *C.* and *D. Churchill ;* that the note was then received, and discounted, by the *Middletown* bank, for the accommodation of *Curtiss ;* that on the 15th of *September*, 1813, *Curtiss* mortgaged to the plaintiff certain lands described in the bill, by a deed, the condition of which, after reciting that the plaintiff had, for the accommodation of *Curtiss*, and at his request, indorsed a promissory note, made by him, for the sum of 400 dollars, dated the 27th day of *August*, 1813, payable to the plaintiff in ninety days from date, at the *Middletown* bank, provided, that if *Curtiss* should pay the said note, when the same should fall due, and should, in all respects, indemnify and save harmless the plaintiff from his indorsement, the deed should be void ; that the note referred to in the condition of the deed is the note first mentioned, but that in drawing the condition, the note, being at that time in the custody of the *Middletown* bank, was, by mere accident and mistake, erroneously described ; that when the note fell due, *Curtiss* and *C.* and *D. Churchill* failed to make payment, and the plaintiff, by means of his indorsement, and his liability incurred thereby, was, on the 28th of *October*, 1813, compelled to pay to the bank the sum of 83 dollars, 42 cents, in part of the sum included in the note, and for the remainder of that sum, to indorse another note of *Curtiss*, for that amount, payable at the *Middletown* bank ; that on the 8th of *November*, 1814, the plaintiff was compelled to pay to the bank the further sum of 110 dollars, part of the said sum of 400 dollars, included in, and secured by, the original note, being the amount of a note given by *Curtiss*, on the 6th of *September*, 1814, payable at the *Middletown* bank, which the plaintiff, by means of his indorsement of said note for 400 dollars, had been compelled to indorse ; and that on the 3rd of *September*, 1814, *Curtiss* mortgaged the premises to the defendants, (now plaintiffs in error) to secure them against loss, by reason of indorsements made by them on two notes, given by *Curtiss*, on the 14th of *July* 1814, for 200 dollars each, payable at the *Hartford* bank. At the close of the bill, the plain-

*Middletown, October, 1819.*

Peters
*v.*
Goodrich.

*Middletown,*
*October,*
*1819.*

Peters
*v.*
Goodrich.

tiff averred, that the value of the mortgaged premises was not greater than 335 dollars, and was very little greater than the sums paid by him as above stated.

The defendants pleaded in abatement, that " the value of the matter or thing in demand, exceeded the sum of 335 dollars ;" and also, demurred generally to the bill.    The plaintiff demurred to the plea in abatement ; and joined in the demurrer to the bill.    The county court overruled the plea in abatement, and the demurrer to the bill ; and passed a decree of foreclosure.    To reverse that decree, the defendants brought a writ of error in the superior court ; which was reserved for the advice of all the Judges.

*N. Smith,* for the plaintiffs in error, contended, 1. That the county court had not jurisdiction of the bill ; and the plea in abatement ought to have been sustained, as it averred, in the words of the statute, *tit.* 42. *c.* 1. *s.* 43. that the matter or thing in demand exceeded 335 dollars.

2. That the mortgage made to the plaintiff below was to secure a note to him for 400 dollars, dated *August* 27th, 1813, and the land was not holden for a note payable to *C. & D. Churchill,* dated *July* 27th, 1813.

3. That the bill did not sufficiently allege the mistake in the deed, so as to entitle the plaintiff to have it corrected.    But if it did,

4. That still the defendants below had no knowledge of the mistake ;  and it could not, therefore, be corrected against them.

5. That the court passed the decree, without correcting the mistake ; whereas if it could be corrected, the court should have done it, by ordering the security to be made what it ought to have been.

6. That the first note, which was secured by the mortgage, was *paid ;* and therefore, no longer constituted an incumbrance on the land.    The subsequent notes never constituted any incumbrance on the land.

*Hotchkiss,* for the defendant in error, contended 1. That the plea in abatement was properly overruled, First, because it did not set forth what " *the matter or thing in demand,*" was. Secondly, because it did not deny the jurisdiction of the court before which the suit was pending.    Thirdly, because it did

not point out what court had jurisdiction.   Earl of *Derby* v. Duke of *Athol,* 1 *Ves.* 202, 4. *Coop. Eq. Plead.* 241.   Fourthly, because the debt and the land were stated in the bill as being severally of less value than 335 dollars, and the plea contained no direct averment to the contrary.   But if the plea had averred the land to be of greater value than 335 dollars, this would not have been sufficient, as the *debt* is *the thing in demand,* which determines the jurisdiction.

2.  That the bill was properly sustained, so far as to correct the mistake stated.  *Baker* v. *Paine,* 1 *Ves.* 457.   *Newl. Contr.* 346 & seq.   *Matson* v. *Parkhurst,* 1 *Root* 404.   *Cook* v. *Preston,* 2 *Root* 78.

3.  That the land stood charged with what was paid on the second note, as it arose out of the first, and was a continuance of *the same debt.*

4.  That the demurrer being to the whole bill, if the plaintiff was entitled to any relief, the demurrer was properly overruled. Bishop of *Sodor* and *Man* v. Earl of *Derby,* 2 *Ves.* 357.   Earl of *Suffolk* v. *Green* & al. 1 *Atk.* 450.   *Baker* v. *Pritchard,* 2 *Atk.* 389.

HOSMER, Ch. J.   1. Whether the subject matter of the bill was within the cognizance of the county court, is the first point of enquiry.

The jurisdiction of the court is tested, by the value of the mortgaged premises.   From the bill it appears, that it did not exceed the sum of three hundred thirty-five dollars; and to this limit, the authority of the county court extends.

The plea to the jurisdiction was correctly overruled, as it averred no fact in an issuable shape.   The value of the property mortgaged should have been specifically alleged, that the adverse party might know the matter relied on by the defendants.   If less certainty were sufficient, the party might be surprized, by the proving of material facts, to disprove which he could have no timely notice to be prepared.   1 *Chitt. Plead.* 235.   Now, by the expression "the matter in demand" contained in the plea, neither the court nor party was apprized, what were the controverted facts; and an issue formed on a traverse taken, would have presented law and fact so intermingled, that the real point of dispute could not be known until the trial, and never would appear on the record.

2.  The next question raised is, whether it was competent

*Middletown,*
*October,*
*1819.*

Peters
*v.*
Goodrich.

for the court to correct the mistake, which took place, in the condition of the mortgage deed.

As between the parties, it is unquestionably clear, that the misdescription of the date of the note, and of the promisee, admitted of correction, on the common principles applied by chancery in similar cases; (1 *Madd. Chan.* 41. & seq.) and the second mortgagees had such constructive notice of the fact from the recorded deed, as placed them in no better condition than their mortgagor. Whatever is sufficient to put a person on enquiry, is considered in equity to convey notice; for the law imputes to a person the knowledge of a fact, of which the exercise of common prudence and ordinary diligence must have apprized him. *Newl. on Cont.* 510. Had the second mortgagees applied to *Goodrich* for information, as it was his interest to represent the facts correctly relative to the mistake, they would have had a communication of all the knowledge they now possess.

3. The question next arising is, whether the condition of the mortgage deed comprises a contract of indemnity, against the indorsement of the note by *Goodrich,* made on the 6th of *September,* 1814.

On the 15th of *September,* 1813, the mortgage deed to *Goodrich* was executed. The condition recited, that, for the accommodation of *Curtiss,* he had indorsed a note, dated the 27th day of *August,* [*July*] 1813, payable in ninety days from date, at the *Middletown* bank; and it then provided, that "if the said *Curtiss* should pay the said note, and should, in all respects, indemnify and save harmless the said *Goodrich* from his said indorsement, the deed should be void." It was correctly said, by Sir *William Blackstone,* (3 *Comm.* 435.) "neither a court of equity nor of law can vary men's wills or agreements, or (in other words) make wills or agreements for them. Both are to understand them truly; and therefore, both of them uniformly. One court ought not to extend, nor the other to abridge, a lawful provision, deliberately settled by the parties, contrary to its just intent." If the words contained in the above condition are regarded, the specific contract referred alone, and exclusively, to a note dated the 27th of *July,* 1813. By the non-payment of this note, *Goodrich* might be damnified; and precisely co-extensive with this possible damage, was the contract of indemnity. The debt he never guarantied, except through the medium of his indorsement: which

contract, of consequence, would be extinguished, so soon as the note was paid, or another, with the consent of the holder, was substituted for it. When *Goodrich* indorsed the above note, he had no idea of indorsing another, or of continuing his responsibility beyond his actual contract. If his intention had been different, the condition of the deed would have recited the agreement, and the contract of indemnity would have been commensurate with it. There is no foundation of pretence, that *Goodrich* was under the obligation of contract to repeat his indorsement on notes for the renewal of the former; because the agreement to indemnify was exclusively limited to the original note. The condition of the deed, which contains all we know of the contract, is silent on this subject; and it would be a very strange assertion, that the person, who has indorsed a specific note, payable at the bank, is, of consequence, under the obligation of an agreement to indorse other notes for the same debt, so long as the rules of the bank authorise a renewal. On the contrary, he is bound by no contract to this extent, unless he has made one; and whether this is the fact, must depend on the proof. The indorsement of the subsequent notes, therefore, was the result of a subsequent contract. By indorsing the latter note, he voluntarily assumed a new responsibility; a responsibility not contemplated, when the mortgage deed was executed. The usual form of conditions, when successive indorsements are intended, which comprise a precise engagement to indorse subsequent notes, shows the common understanding on this subject. *The United States* v. *Hooe*, & al. 3 *Cranch* 73. " If a clause be contained in the first mortgage deed, making it security for further sums borrowed, subsequent loans will have relation to, and be taken as part of, the original transaction; and they must be paid before a second mortgage intervening, although the first mortgagee had notice of it, at the time of advancing more money, if the second mortgagee had notice of the clause in the first mortgage." *Gordon* v. *Graham*, 7 *Vin. Abr.* 52. *pl.* 3. cited 1 *Pow. on Mort.* 544. The converse of this proposition is equally true; that if there be no clause in the condition, making it a security for future contracts, they are no part of the original transaction; and a second mortgagee must be paid before the subsequent debt of the prior mortgagee. The lien in behalf of *Goodrich* terminated with the extinguishment of the first note; and the court cannot resusci-

*Middletown,*
October,
1819.

Peters
*v.*
Goodrich.

*Middletown,*
October,
1819.

Peters
*v.*
Goodrich.

tate a right, which expired, when that note was taken up. The error on this head consists in considering *Goodrich* as having guarantied the debt, until it should be actually paid, without regard to the form in which it is evidenced. But the condition of the mortgage warrants no such construction. So long as the specific note indorsed by him was collectible, his liability as indorser continued; and so soon as the note was without force, the liability ceased; and, of consequence, the mortgage, which was an indemnity on that specific account. The right of the second mortgagees, being alone posterior to the prior incumbrance of *Goodrich*, the removal of that incumbrance gave full effect to their lien, and virtually rendered them, except as to the damage arisen, sole mortgagees.

It has been said, that as *Goodrich* has the legal title to the land mortgaged, the court will not coerce it from him, but will consider him as though he were a mortgagee, until the sums advanced for *Curtis* have been fully paid. This is unquestionably true, if he stands in equal equity with the subsequent mortgagees. But he does not stand in equal equity. The indorsement of the note, against which indemnity is now demanded, was made by him three days after he had constructive notice, by the record of the mortgage to the second mortgagees. That the record is notice, has been always considered in this state as an indisputable truth; and in *Ireland*, where their deeds are registered, the point has been explicitly adjudged by Lord *Redesdale*. *Latouche* v. Lord *Dunsany*, 1 *Schoales & Lefroy*, 157. So far as relates to the indorsement of the last note, *Goodrich* can be viewed only as a general creditor.

The following propositions have been frequently admitted, and are incontrovertibly established. First, That general creditors are, in all cases, bound by a particular equity. 1 *Pow. on Mort.* 459. *Burn* v. *Burn*, 3 *Ves.* jun. 576, 582. *Brace* v. Duchess of *Marlborough*, 2 *Peere Wms.* 491, 493. Hence, the lien of the second mortgagees on the estate mortgaged, gives them superior equity to the first mortgagee, after his incumbrance is raised. Secondly, That an heir, or the devisee of the mortgaged premises, cannot redeem a mortgage, without paying a bond, though there is no judgment; and this to prevent circuity of action; but that equity does not prevail against a purchaser, a mortgagee, for instance, the bond creditor having no lien on the land. 1 *Madd. Chan.* 424. 2

*Swift's Syst.* 430, 1. *Powis* v. *Corbet*, 3 *Atk.* 556. Third- ly, That the advancement of money, by the first mortga- gee, to the mortgagor, or even the purchasing in a prior legal title, will be of no avail, if the person loaning the mo- ney, or purchasing the title, at the time of the transaction, had notice of a mesne incumbrance ; " for it is the [lending and] purchasing *without notice*, that gives him equal equity." 1 *Pow. on Mort.* 536, 537. *Brace* v. Duchess of *Marlborough*, 2 *Peere Wms.* 494, 5. 1 *Madd. Chan.* 422. 424. On the con- trary, he that has the legal title shall be disarmed, in favour of the person who has superior equity. 1 *Pow. on Mort.* 479. 544, 5.

All the above principles apply strongly in behalf of the sec- ond mortgagees. *Goodrich* was only a general creditor, with. out lien on the estate. From the record of his deed, the sec- ond mortgagees had a right to consider the property as solely pledged to indemnify him from his first engagement. And having notice of the second mortgage, *Goodrich* could do no act to give himself equal equity with the second mortgagees. A different doctrine were absurd. It must go the length of asserting, that the first mortgagee, with notice of subsequent incumbrances, created by the loan of money, or in any other mode, may enlarge his lien, and defeat the subsequent mort- gagees.

The foreclosure is, therefore, good, only as to the sum of 83 dollars, 42 cents, paid by virtue of the indorsement of the first note.

BRISTOL, J. was of the same opinion.

CHAPMAN, J. When application is made to a court of equi- ty, to take from another a *legal* right, it is essential for the ap- plicant to shew, that no *injustice* will thereby be done to him, who is possessed of such *legal* right. He must *do equity*, be- fore he has a right to ask it. It is one of the excellencies of a court of equity, that it may *deny its aid*, whenever *justice* re- quires it ; or may lend it, on such terms, as it may think proper to prescribe.

On marriage, the husband is, at law, entitled to all the per- sonal property of the wife ; but if the legal title to it is in her trustees, so that the husband cannot reach it at law, a court of equity will refuse its aid, until a suitable settlement, if rea-

*Middletown*,
October,
1819.

Peters
*v.*
Goodrich.

20

*Middletown,*
October,
1819.

Peters
*v.*
Goodrich.

sonable, is made on the wife.  Courts of law are, in consequence of the rigidness, as well as generality of their rules, often *obliged* to do injustice ;—courts of equity, never.  The flexibility of their rules enables them to follow fraud and injustice into, and drag them from, all their lurking places.

The mortgagee, after forfeiture, though the mortgage money be paid, can support ejectment against the mortgagor ; though manifestly unjust.  A court of equity only can give him relief.  Indeed, courts of equity owe their existence to the inability of courts of law to do justice in all cases.

In the present case, the plaintiff seeks to dispossess the defendant of a *legal right ;* and the aid of this Court is sought, to effectuate the object.    This aid, however, this Court ought not to lend, so long as the *legal* possessor has any just claim to retain it.   Since the defendant has the *legal* estate, he is not to be dispossessed of it, till his *equitable* claims are satisfied.  His equity is equal to that of the plaintiff; and it is a rule in equity, that where the parties stand on equal ground, he who has the *legal* estate shall prevail.

The defendant, in this case, has the *legal* estate ;  and the only enquiry necessary to be made, is, whether all the *equitable* claims of the defendant have been satisfied ; for until that is done, the plaintiff does not bring himself within the maxim, " that he who seeks equity, must do equity."

The condition of the mortgage deed is, (after stating, that the plaintiff had, for the accommodation of said *Curtiss*, and at his request, indorsed a promissory note, made by him, for the sum of 400 dollars, dated the 27th day of *August*, 1313, payable in 90 days from date, at the *Middletown* bank,) that if the said *Curtiss*, (mortgagor,) should pay the said note, when the same should fall due, *and should, in all respects, indemnify, and save harmless, the plaintiff from his indorsement*, the deed should be void.

Nothing but a strict performance of this condition could prevent the legal estate in the mortgaged premises from vesting in the defendant.   It is admitted, that the condition was not performed ; and the plaintiff proceeds upon that ground.  The legal title is in the defendant; and the object of this bill is, to divest him of it.

This, the plaintiff is entitled to do, though the condition was not strictly performed ; and though, by forfeiture, the legal estate was vested in the defendant ; provided he can show, that he (the defendant,) has been indemnified.   It is impor-

tant to observe, that the mortgagor agrees, not only to *pay* the note, but to indemnify the defendant *in all respects.* Do not the facts disclosed, most manifestly shew, that this has never been done? The defendant has been obliged to pay 110 dollars, which was part and parcel of the original note of 400 dollars. But it is said, that the lien on the land for this sum is lost, because, the original note counted on in the mortgage, was taken up; and, subsequent to the second mortgage, the note of 110 dollars was given for the balance due thereon.— But has the mortgagor ever *paid* the note of 400 dollars? No. Has he *indemnified* the first mortgagee? No. But he (the first mortgagee,) has indorsed a second note, which was given for a part of the original note of 400 dollars; and therefore, in *equity,* he has lost his lien on the mortgaged premises.

The whole argument proceeds upon a falacy. The note and the debt are considered as the same thing; whereas, the note is but *evidence* of the debt. Courts of law, mole-blind as they sometimes necessarily must be, will take notice, that the renewal of a note, is no payment of the debt. A usurious note renewed, is still usurious. It would, then, seem strange, that a court of equity, which is not, like courts of law, entangled with forms, could not see from the facts disclosed, that the mortgagor had never paid the note, though he had renewed it; and that he had not *indemnified the mortgagee;* and that the mortgagee should be divested of a legal estate, though he had been obliged to pay 110 dollars of the original debt of 400 dollars, in favor of one who had a more equitable claim.

In England, the first mortgagee, who has bought in a subsequent incumbrance, without notice, may protect himself against a mesne incumbrancer, until he has been paid the incumbrance he has bought in, and his own. Though this doctrine is not applicable to this state, as mortgage deeds must here be recorded, and of course, a purchaser must always have constructive notice; yet the principle is in full force. It is an unvarying rule in a court of chancery, never to divest one of a *legal* estate, so long as he can shew an equitable lien on it. Form is wholly disregarded. Should the first mortgagee, after forfeiture, receive payment in counterfeit money, and give a receipt in full for it, the second mortgagee could not redeem, without paying the whole debt, unless the first mortgagee had released, so as to have divested himself of the legal title. The same rule applies to any mistakes, which may

have intervened in a settlement between the mortgagor and mortgagee in relation to the sum due. A court of equity has always a *discretion*, and will never interfere, unless he "who asks equity, will first do equity." Otherwise, parties will be left to their remedy at law; not that courts of equity proceed without rules; but these rules are made subservient to the great ends of justice. If they were not, courts of equity would be worse than useless.

The question, then, recurs—Has the first mortgagee, in this case, been *indemnified?* It is admitted, he has not. Was not that one of the conditions in the mortgage deed? It manifestly was. It is, then, beyond my comprehension to imagine how a court of equity could compel him to relinquish his *legal* estate, until he was indemnified. It is said, indeed, that the giving a new note is an extinguishment of the old one. However this may be at law, it is not so in equity, when one seeks to divest another of a *legal* estate, while the holder has an equitable lien on it. Can the mortgagor say to the mortgagee—"You indorsed for me a note of 400 dollars, payable at the *Middletown* bank, in ninety days; and to secure you, I gave you a mortgage, the condition of which was, that the legal title should vest in you, if I did not pay the note, when due, and also *save you harmless* in *all respects*. The note has not, indeed, been paid; but it has been taken up, and a new one given for the balance:—therefore, the *debt* of 400 dollars has been *extinguished;* and though you indorsed the note, and have been obliged to pay it, still you are *indemnified*, and the lien on the mortgaged premises is *extinguished;* and I am entitled, in a *court of equity*, (which, indeed, never interferes, to divest one of a *legal* title, until perfect equity has been done him,) to have a re-conveyance of the premises!"

The second mortgagee has no equity, which did not belong to the mortgagor. I am, therefore, clearly of opinion, that the decree of the superior court was correct throughout, and ought to be affirmed.

BRAINARD, J. was of the same opinion.

PETERS, J. being a party in the suit, gave no opinion.

The decree to be affirmed as to the sum paid on the first note; and reversed as to the residue.