POND *against* CLARKE and others.

Where a mortgage was given conditioned to save the mortgagee harmless from his indorsement of specified notes, and such notes, as they respectively became due, were renewed, by the substitution of other notes or drafts having

different names on them ; but the obligation of the original indorsement by the mortgagee, was preserved through the whole series of renewals and substitutions, without any new eredit being given, and the substituted paper was ultimately paid by him ; the debt thus paid being the same debt for the security of which he made the original indorsement; it was held, on a bill of foreclosure against the mortgagor and subsequent mortgagees, that the plaintiff was entitled to the relief sought.

The case of *Peters* v. *Goodrich,* 3 *Conn. Rep.* 146. is not a binding authority. Where a mortgage embracing personal property, was given to secure certain debts due to the mortgagee, and liabilities assumed by him for the benefit of the mortgagor; and the mortgagee permitted such personal property to go into the possession of the mortgagor, with the understanding that he should appropriate it to satisfy the claims secured by the mortgage; and he in fact paid therewith as large a proportion of such claims as could have been paid from the avails of the property, if it had been sold by the mortgagee; it was held, that the mortgagee had not thereby lost his lien on such property, and that subsequent mortgagees had no ground of complaint, as they took their security subject to the payment of the claims which had thus been satisfied.

This was a bill in chancery for a foreclosure of mortgaged premises.

On the 12th of *August,* 1836, *Phineas F. Frazee* and *Jesse J. Brown,* being partners in the business of manufacturing and vending carriages, under the name of *P. F. Frazee & Co.* in *Connecticut,* and of *J. J. Brown & Co.* in *Virginia,* mortgaged to *Adolphus Baldwin, Charles H. Pond* and *Charles P. Strong,* all of *Milford* in this state, the manufacturing establishment of the mortgagors in *Milford,* and also personal estate to a considerable amount. *Baldwin* was their indorser on five notes, and their creditor by book for about 490 dollars, and by three notes due directly to himself. *Pond* was their indorser upon six notes, and also a draft for 1000 dollars, payable in *Virginia ;* and they were indebted to him about 160 dollars by book. *Strong* was their creditor by book, to the amount of 500 dollars. The condition of the mortgage, after reciting these claims, proceeded thus : " If we shall save entirely harmless our said indorsers from all indorsements, and shall well and truly ourselves pay up all said notes, drafts and obligations, as they fall due, and shall moreover fully pay said book debts to the persons aforesaid to whom due, then this deed shall be void, otherwise in full force." On the 13th of *August,* 1836, the day after this mortgage was given, the partnership between *Frazee* and *Brown* was dissolved, and *Frazee* transferred to *Brown* all

his interest in the partnership, and *Brown* assumed all their debts and liabilities, including those specified in the mortgage. Early in *September*, 1836, *Brown* became a partner with *David Atwater* in the same business, under the firm of *Jesse J. Brown & Co.*, and took possession of the same establishment, including the personal property mentioned in the mortgage, with the knowledge of the mortgagees. Of this property they had the entire management, and disposed of it as part of their stock, with the understanding that they should satisfy, as fast as practicable, the claims secured by the mortgage; and they in fact paid therewith as large a proportion of such claims, as could have been paid from the avails of the property, if it had been sold by the mortgagees.

On the day of the dissolution of the partnership of *Frazee* and *Brown*, they executed a second mortgage of the same property to about twenty other persons, all of whom, except *Clarke* and the other defendants, have assigned their claims and their interest in the second mortgage, to *Charles H. Pond* of *New-York*, the plaintiff; who also took an assignment of the claims and interest of *Charles H. Pond* of *Milford* and the other mortgagees named in the first mortgage.

Among the notes specified in the condition of the first mortgage, was one indorsed by *Adolphus Baldwin*, dated *July*, 1st, 1836, at 60 days, for 400 dollars, signed by *P. F. Frazee & Co.*, and discounted for their benefit, at the *New-Haven* bank. In *September*, 1836, after this note fell due, it was taken up, by another note of 400 dollars, signed by *Adolphus Baldwin*, and indorsed by *Charles H. Pond* of *Milford* and *Charles P. Strong*. This was taken up, on the 2nd of *May*, 1837, by a draft of *Jesse J. Brown & Co.* on *David Atwater*, by him accepted, and indorsed by *Adolphus Baldwin*, *Charles H. Pond* of *Milford*, and *David L. Baldwin*. This draft was taken up, on the 3rd of *August*, 1837, with a note for 400 dollars, signed by *Jesse J. Brown & Co.*, and indorsed by *Adolphus Baldwin* and *Charles H. Pond* of *Milford*; and on the 22nd of *April*, 1839, *Adolphus Baldwin* paid it in full. The notes and drafts not taken up when due, were regularly protested, and notice given.

The case was reserved for the advice of this court as to what decree should be passed.

*C. A. Ingersoll,* for the plaintiff, contended, 1. That by the mortgage deed of the 12th of *August,* 1836, the mortgagors were divested of their whole legal title, to be reinvested with that title, upon the performance of not only one, but of all the conditions. It is not a mortgage of one third, to secure the debt of one, and the mortgage of another third to secure the debt of another, and a mortgage of the remaining third to secure the debt of the other. If this were so, each mortgagee could foreclose a third part of the mortgaged estate, and a third only. But this could not be done upon a joint mortgage to two or more. *Palmer* v. *Earl of Carlisle* & al. 1 *Sim. & Stu.* 423. 3 *Pow. Mort.* 863. The mortgagees do not take each an undivided third, and that only. Even at law this would not be the case, if it appeared by the deed, that the consideration paid was not equal. 2 *Pow. Mort.* 671. n. *v.* In equity, joint mortgagees hold in proportion to their respective demands. *Donnels* v. *Edwards* & al. 2 *Pick.* 617. They are trustees for each other. 2 *Pow. Mort.* 671. n. *i.* The whole of the mortgaged property, then, is holden, in equity, to pay each debt, and all the debts.

2. That the mortgagors have not performed the condition of the mortgage. They have not paid the book debts, or the notes or drafts; and they have not saved the indorsers harmless. The several renewals of the note for 400 dollars, did not operate as a payment of the debt, or a discharge of the mortgage. *Bolles* v. *Chauncey,* 8 *Conn. Rep.* 390. *Pomeroy* & ux. v. *Rice,* 16 *Pick.* 22.

3. That the defendants cannot complain of the disposition of the personal property mortgaged, as it has all gone to reduce the debts of the first mortgagees. *Kendall* v. *The New-England Carpet Company,* 13 *Conn. Rep.* 384.

*Baldwin,* contra, in behalf of three of the defendants claiming under the second mortgage, insisted, 1. That the condition of the first mortgage was fulfilled; that the indorsers were saved harmless from their indorsements of the notes specified; in support of which, he relied upon *Peters* v. *Goodrich,* 3 *Conn. Rep* 146., recognized and confirmed, as he claimed that it was, in *Bolles* v. *Chauncey,* 8 *Conn. Rep.* 392. He also referred to *Evans* v. *Drummond,* 4 *Esp. Rep.* 91.

*New-Haven,*
*July, 1841.*

Pond
*v.*
Clarke.

2. That the first mortgagees were chargeable with the value of the personal property given up. The payments by *Frazee* and *Brown* from their own property, cannot apply against this charge.

SHERMAN, J. It has been insisted, by the defendants, that the just construction of the condition of the first mortgage is such, as to the several indorsements which it specifies, that the indorsers are entitled to no indemnity for the damages they may have sustained, by becoming security upon new notes or drafts, given on renewal of the first. To sustain this position, the case of *Peters* v. *Goodrich, 3 Conn. Rep.* 146., is pressed upon our consideration. That was a writ of error on a decree of the county court on a bill in equity for the foreclosure of a mortgage. The plaintiffs in error were defendants in the court below. A note of 400 dollars, dated *July* 27th, 1813, was made by *John Curtiss,* payable to *C. & D. Churchill,* or order, at 90 days, and indorsed by them, and also by *Goodrich,* for the accommodation of *Curtiss,* and discounted at the *Middletown Bank.* In *September,* 1813, to secure *Goodrich,* a mortgage was made to him, by *Curtiss,* conditioned, " that if *Curtiss* should pay the said note, when the same should fall due, and should in all respects indemnify and save harmless the said *Goodrich* from his said indorsement, the deed should be void." The case states, that *Curtiss* failed to pay the note, " and the plaintiff, by means of his indorsement and by the liability incurred thereby, was, on the 28th day of *October,* 1813, compelled to pay the bank the sum of 83 dollars, 42 cents, in part of the sum included in the note, and for the remainder of that sum, to indorse another note of *Curtiss* for that amount, payable at the *Middletown Bank :* That on the 8th day of *November,* 1814, the plaintiff was compelled to pay the further sum of 110 dollars, part of said sum of 400 dollars, included in, and secured by, the original note, being the amount of a note given by *Curtiss,* on the 6th of *September,* 1814, payable at said bank, which the plaintiff, by means of his indorsement of said note for 400 dollars, had been compelled to indorse ; and that, on the 3rd of *September,* 1814, *Curtiss* mortgaged the premises to the defendants to secure them." These facts were admitted, by a demurrer. One question which arose, was, whether the mort-

gage to *Goodrich* was a security for the payment made by rea-
son of his second indorsement. The Chief Justice, in giving his
opinion, says, that *Goodrich* might be damnified, by the non-
payment of the first note, and that the contract of indemnity
was "*precisely co-extensive with this possible damage.*" This
is certainly a correct proposition, and would seem to warrant
the conclusion, that if the plaintiff was compelled, by reason
of that indorsement, to pay the debt to the bank; if, under
this necessity, he indorsed a renewal note for *Curtiss* for the
same debt, and was obliged, on its maturity, as the demurrer
admitted, to pay, and did pay, the sum stated in the bill upon
that second note, this was a damage necessarily resulting
from his first indorsement, against which he was clearly enti-
tled to indemnity, by the condition of the deed. But the Chief
Justice came to a different conclusion, and held, that the
mortgage was no security for the second indorsement. One
other judge concurred in this opinion, and two dissented. In
the case of *Bolles* v. *Chauncey*, 8 *Conn. Rep.* 389., the case
of *Peters* v. *Goodrich* is doubted, by Judge *Peters*, in whose
favour it was decided, although he yields to its authority.

As that case was decided by an equally divided court, con-
trary to what would probably have been the result, had they
all been competent to act, and upon grounds to which we
cannot assent, our opinion is unanimous, that we are not
bound by its authority.

The payment which was ultimately made by *Adolphus
Baldwin*, was as really the necessary consequence of his first
indorsement, as if no intermediate notes had been given.
The fact is found, that there were due protest and notice up-
on all the notes, as they respectively fell due. There was
not a moment between the first indorsement and the final
payment of the debt, when he was absolved from the obliga-
tion for which he took the indemnity. Nor was his right at
all impaired, by the assumption of the liabilities of *P. F.
Frazee & Co.*, by *Jesse J. Brown*, or by the substitution of
new notes, by new parties. Had *Baldwin* made his indorse-
ment on any note thus substituted, at the request, and upon
the credit of new parties, the damage he finally sustained
would not have been the consequence of his original indorse-
ment, and would not entitle him to look to the mortgage for
indemnity. But there is no proof of a new credit. On the

*New-Haven,
July, 1841.*

Pond
*v.*
Clarke.

contrary, it is found, that the obligation of his first indorsement was preserved through the whole series of renewals and substitutions, by a due observance, on the part of the bank, of the legal requisites for that purpose. It is expressly found, that the ultimate payment which he made, was for the same original debt for which he became security, by his first indorsement. Why then should we be called upon to conjecture, that a new agreement, or some other consideration than the palpable necessity resulting from the first indorsement, had induced him to continue his security, and finally to pay the debt?

What we have said of these indorsements of *Adolphus Baldwin* sufficiently illustrates our views of the rest, and renders a particular consideration of them unnecessary.

It has been contended, that the first mortgagees, by permitting the personal property to go into the possession of *Jesse J. Brown & Co.,* lost their lien upon it, and that it should enure to the benefit of the second mortgagees. But the first mortgagees had a right to appropriate it to the payment of the debts for which they became security, and which the mortgagors had bound themselves to pay; and for this purpose, to employ those agents; subject, however, to account for any loss sustained by the want of due fidelity. It is found, that the value of this property was 5000 dollars, which has been applied in payment of debts, according to the condition of the deed. As the defendants took their mortgage subject to the payment of these debts, for the indemnity of the indorsers, they have the benefit of this appropriation. There has been no waste of the property, nor any apparent imprudence in the manner in which it was applied.

We are of opinion, that the defendants are not entitled to redeem, without payment of the sums advanced by *Baldwin* and *Pond,* by reason of their indorsements, and also the sums due to the respective mortgagees for their individual debts.

In this opinion the other Judges concurred.

*Decree for plaintiffs.*