HENRY WILLIAMS et al., Complainants and Appellees,

*vs.*

FREDERICK J. A. STARR, Defendant, Appellant, impleaded with ADELAIDE STARR et al.

APPEAL IN EQUITY FROM DANE CIRCUIT COURT.

Where only one of several defendants against whom a decree is rendered, appeals, those defendants not appealing are presumed to be satisfied with the decree, and the appellate court will consider the equities of the case pertaining to the appellant's relation to the cause.

Where the defendant in his answer sets up matter in avoidance, not responsive to the bill, his proofs must be confined to the allegations set out in the answer, that is to say, the *allegata* and the *probata* must correspond.

Proofs of matter in avoidance cannot avail as a defence unless they are in support of some allegation contained in the answer.

A promissory note is the evidence of indebtedness, and the substitution of one note for another does not discharge the debt evidenced thereby, nor release the security given for its payment.

As between the immediate parties it is competent for them to change the time and mode of payment, and still retain the mortgage security.

Any material erasure or interlineation in a note, will vitiate it unless explained; not so, if it be wholly immaterial.

The changing the printed form of a note from "order" to "bearer," if it appear to have been done at the time of execution, will not affect its validity.

The printed letters [L. S.], inclosed in brackets or parentheses in the usual place of a seal, is a sufficient device under the provisions of our statute, to answer the purpose of a seal, and a party prefixing his signature to such a device upon an instrument purporting to be under seal, will be held to have adopted such device as his seal.

A mortgage given upon the homestead by a married man, is not valid, even as against him, without the signature of the wife.

THE complainants filed in the court below, on the 11th June, 1855, against the said defendants, their bill, for the foreclosure of a mortgage alleged to have been executed by the said Starr and wife to said complainants, bearing date on the 9th day of April, 1855, securing four certain promissory notes, in said bill described as payable one day after date, and executed by the

said defendant, F. J. A. Starr, to said complainants, the mortgaged premises containing about six acres of land, in the town of Sun Prairie, in said county, and occupied, as alleged in said bill, by the said Starr and wife as their homestead before and at the date of said mortgage and filing of said bill. Said bill, after making various judgment creditors parties thereto, makes Desire Barrell, Elijah Rowley and Moses Rowley also defendants in said bill, as claiming; to have an interest in the mortgaged premises by virtue of a prior mortgage given by the said Starr and wife to secure the purchase money of said premises, and prays that the said complainants may have precedence not only of said judgment creditors, but also. of the said prior mortgage, with the usual prayer for sale, &c., waiving the answer under oath of the defendants.

On the 7th day of July, 1855, a rule was entered requiring the said defendants, Frederick J. A. Starr, Adelaide Starr, Desire Barrell, Elijah Rowley and Moses Rowley, who had been duly subpœnaed, &c., to plead, answer, &c., to said bill, by the 10th day of August, 1855.

On the 8th July, 1855, subpœna was returned duly served upon the defendant Lester Sexton.

On the 20th July, 1855, an order of publication was obtained as to the defendants Lorin Sexton, George Sexton and Edward Bolles.

On the 3d day of August, A. D. 1855, the said defendant, Adelaide Starr, filed her separate answer to said bill, in substance as follows:

That she believed that the said F. J. A. Starr did, on or about the 9th day of April, 1855, execute to said complainants, or some of them, certain promissory notes, but how many or to what amount she did not know; that said Starr did also, as she believed, at the same time undertake to execute to said complainants, or some of them, a mortgage on the premises described in said bill, but whether said mortgage was legally executed and acknowledged by the said F. J. A. Starr, she could not say; that she had no remembrance or knowledge of ever having joined with the said F. J. A. Starr in the execu-

tion of any deed or mortgage to said complainants, or either of them; that at the date aforesaid she was in a very low and feeble state both of mind and body from sickness, &c., and if she executed and acknowledged any such mortgage it was when she was entirely unconscious of what she was doing, and charges knowledge of her aforesaid condition on the part of said complainants, and that, if her signature and acknowledgment were obtained to said mortgage, it was done through the fraud of said complainants, and that she ought not to be bound thereby. She further denies that there was anything due on the notes which were alleged to have been given by the said F. J. A. Starr on the said 9th day of April, 1855, but stating that all those notes for the security of which said mortgage had been attempted to be executed, had been, before the commencement of this suit, given up to the said Starr, and canceled, and that, as a consequence thereof, said mortgage, if it ever had any force or effect against either the said F. J. A. Starr or herself, became and was hereby discharged and void. She further admits that the alleged mortgaged premises had been, since about the 8th day of August, 1854, to the time of making her answer, occupied by the said F. J. A. Starr and herself, with their family, as a homestead, and that, therefore, any deed or mortgage thereof of the said F. J. A. Starr, without her voluntary signature, would be absolutely null and void; and claims that, even if said mortgage were properly executed by the said F. J. A. Starr, yet, wanting the voluntary signature of her, the said Adelaide Starr, the same was void. Her answer further acknowledges the execution of the said prior mortgage to the said Desire Barrell, and closes with the usual prayer.

On the same day, also, the defendant Elijah Rowley, filed his answer, stating his ignorance as to the execution of the notes and mortgage described in said bill, but alleging that, if any such had been executed, as set forth, they had been surrendered and canceled before the commencement of this suit; stating also his ignorance as to the claims of the defendants Sexton and Bolles; admitting that he claims an interest in said premises as owner of the prior mortgage aforesaid, which last-mentioned mortgage was

dated the 8th day of August, 1854, securing four notes, amounting in the aggregate to four hundred dollars and interest, part purchase money of said premises, assigned to him by the said Barrell, and stating that no portion of said last-mentioned notes had been paid.

On the 13th day of the same month of August, the said complainants filed their general replications to the aforesaid answers of Adelaide Starr and Elijah Rowley: and on the same day an order was entered requiring Lester Sexton to plead, &c., on or before the 13th November, 1855, and on the same day also *order pro confesso* as to F. J. A Starr, Desire Barrell and Moses Rowley.

On the 9th November, 1855, the said F. J. A. Starr filed in open court his motion to take off the default entered against him, for the reason that he was absent from the state from the time of the commencement of this suit until the first of August, and then returned too unwell to attend to business, &c., &c., verified by affidavit, and accompanying said motion with a copy of the answer proposed to be filed.

On the 27th November, 1855, by leave of court, the said F. J. A. Starr filed his answer, stating in substance that he did, on or about the 9th of April, 1855, execute to said complainants, or some of them, four promissory notes, payable not as in said bill alleged, but some weeks, and perhaps months, after said date—the *exact* time of payment forgotten, but believed that one of them was payable one day after date, one in three months, one in five months, and the other in six months; and that, to secure the payment of *these* notes, at the time, &c., he did, at the same time, execute a mortgage, bearing same date with said notes. He further, in said answer, denied that there was anything due on said notes, or either of them, but averred that he had paid, satisfied and discharged all the notes for the security of which said mortgage was given; that on the 10th day of April, 1855, said notes were given up by said complainants to him to be canceled, and were then and there canceled and discharged, whereby said mortgage was also destroyed and no longer of force against said defendant; admitted the occupation of said

mortgaged premises as his homestead; did not know definitely as to the interest of said defendants, Sexton and Bolles; admitting the mortgage to Desire Barrell for about six hundred dollars, part purchase money; did not know who owned said mortgage; and prays to be hence dismissed, &c.

To this answer the complainants filed their general replication on the 3d day of December, 1855.

On the 19th day of December, 1855, the said defendants, F. J. A. Starr, Adelaide Starr and Elijah Rowley, who had answered as aforesaid, filed in said court the following interrogatories to be answered by said complainants under oath:

*Int.* 1. Which of said complainants were present when the defendants F. J. A. Starr and Adelaide Starr executed the mortgage in the complainant's bill described; and at what particular place was said mortgage executed and delivered; and who drew it up; and to whom was said mortgage delivered?

*Int.* 2. How many notes, and what the amount of each, were executed and delivered by the said F. J. A. Starr in favor of said complainants, at the same time and place with the said mortgage, to secure which said mortgage was given?

*Int.* 3. What became of the notes which were thus executed and delivered at the same time and place with said mortgage?

*Int.* 4. Were not all of the notes which were thus executed and delivered at the same time and place of said mortgage subsequently given up to the said F. J. A. Starr, and canceled? If all were not given up, how many of them were; and what became of the remainder?

*Int.* 5. What were the times of payment of the several notes executed and delivered concurrently with and at the time and place of said mortgage? State, according to your best impression, information and remembrance.

*Int.* 6. How long was it after the execution of the notes and mortgage, in the foregoing interrogatories mentioned, before said notes were given up, and the notes in suit in this cause given in their stead; and at what particular time and place were these last-named notes executed and delivered; and to whom were they delivered?

*Int.* 7. Was the said defendant, Adelaide Starr, ever made acquainted with the fact that the notes, to secure which she had joined in the execution of said mortgage, were given up and canceled, and the notes described in the bill in this cause given in their place? If so, when, and by whom?

*Int.* 8. Who were present when the first-given notes were surrendered and the subsequent notes executed by the said F. J. A. Starr in their stead?

*Int.* 9. By whom was the business, in taking said mortgage and receiving and surrendering said notes, &c., transacted, and on whose behalf did he or they act?

On the 7th day of April, A. D. 1856, the answers of said complainants were filed as follows:

"The joint and several answers of Samuel L. Strong, Caleb B. Crapo and George C. Russell, parties complainant in this suit, to the several interrogatories by the defendants, Fred. J. A. Starr, Adelaide Starr and Elijah Rowley, exhibited and propounded to all and every of the complainants. These complainants now, and at all times hereafter, saving and reserving to themselves all advantage and benefit of exception to the manifold errors and imperfections of the said interrogatories, arising from impertinence, immateriality or otherwise, by protestation, not confessing or acknowledging the right of the said defendants to exhibit or propound said interrogatories, for answer thereto, answering the first of said interrogatories, say: That neither of said complainants were present when the said mortgage was executed; that said mortgage was drawn up at the store of the said Fred. J. A. Starr, by the complainant Goodrich, and was taken by said Starr from the store to his house, as he then said, and shortly after brought back by him, executed and acknowledged by himself and the said Adelaide, and delivered to the complainants, Goodrich and Strong, as hereinafter will be made more fully to appear. And these complainants, further answering to the second of said interrogatories, say: that there were four notes, three for the sum of $415.42 each, and one for the sum of $300, executed by the said Fred. J. A. Starr at or about the time of the execution of said mortgage, which said notes were

given for certain debts and demands then due and unpaid, which the complainants, Henry Williams, James Bonnell and Edward H. Goodrich, doing business under the name, style and firm of Williams, Bonnell & Co., in the city of Milwaukee, and Samuel L. Strong, Caleb B. Crapo and George C. Russell, then doing business in Madison under the name, style and firm of Strong, Crapo & Russell, held against the said Fred. J. A. Starr;—that the complainants had been informed, and they believed, that said Starr was insolvent, and being desirous to secure the payment of their several debts and demands aforesaid, the said Goodrich, representing the firm of Williams, Bonnell & Co., and the said Strong, representing the firm of Strong, Crapo & Russell, went to Sun Prairie for that purpose, and on their arrival there found the said Starr in private consultation with divers persons in reference to his business affairs, to a portion of whom, as the said Starr then and there represented to the said Goodrich and Strong, he was indebted; that after a short interview between the said Goodrich and Strong, and the said Starr, as to his affairs, and more particularly with reference to his indebtedness to the said Williams, Bonnell & Co., and Strong, Crapo & Russell, the said Starr offered to give his four promissory notes for the amount of said indebtedness, secured by mortgage to be executed and acknowledged by the said Fred. J. A. Starr and Adelaide Starr, and delivered to the complainants, on the premises described in the said complainants' bill of complaint, the said Starr then and there representing to the said Goodrich and Strong that the said premises were free and clear from all incumbrances whatsoever, excepting what was to become due on a certain mortgage to one Desire Barrell, and that if he, the said Starr, could make a satisfactory arrangement with the complainants for the sum due them, and could also arrange one or two other small matters with some of his other creditors, he would be able to go to New York and buy goods and continue in business, which he was anxious to do: but the said Goodrich and Strong, having reason to suspect that said representations were false, and intended only to mislead and deceive them; and, suspecting such to be the case, they did not like to

take the said notes and mortgage in full settlement between the said Frederick J. A. Starr and the complainants without first examining the records to ascertain whether said premises were free and clear from all incumbrances, as had been represented by the said Starr, and no final settlement was then and there made between him and the complainants; but it was understood by and between them respectively that the said Frederick J. A. Starr was to execute to the complainants his four promissory notes, each for the several amounts hereinbefore stated, from the said Fred. J. A. Starr and Adelaide Starr, and the said Goodrich and Strong, representing their respective firms, were to take said notes and mortgage to Madison, and if found correct, and the mortgaged premises free and clear from all incumbrances, as represented, then they were to receive the same in settlement of the debts and demands due from the said Starr to the complainants, and they were to deliver up the notes and receipt the accounts which they then held against him, and the said Starr was to come to Madison the next day and complete the arrangement.

" That in pursuance to this understanding and agreement, the said Goodrich drew up the mortgage in question, and four promissory notes to be secured by the said mortgage, for the several amounts hereinbefore stated, which was executed by the said Starr; that the said Starr took the said mortgage to his house, as he then informed the said Goodrich and Strong, and shortly after came back to the store with said mortgage executed and acknowledged by himself and the said Adelaide Starr, and delivered the same to the said Goodrich and Strong, who returned to Madison late in the evening, and the next morning became satisfied that the premises were unincumbered, except as heretofore represented; but on submitting the notes, which were what are commonly known as "judgment notes," to the inspection of their attorney, it was discovered that mistakes had been made in filling up the warrants of attorney accompanying all of said notes, and that the said Frederick J. A. Starr, coming to Madison according to the understanding and agreement made the day previous, was informed by the said Goodrich and Strong of the

mistakes aforesaid, and all of said judgment notes were, at the store of Strong, Crapo & Russell, delivered up to the said Starr, and four other judgment notes made by the said Starr in their stead, and delivered by him, with the mortgage aforesaid, to the said Goodrich and Strong, who, for and on behalf of their respective firms, gave up the notes and receipted the accounts which said firms previously held against the said Starr. And these complainants, further answering to the third, fourth and sixth of said interrogatories say, that the same are hereinbefore sufficiently answered, and require no further answer thereto. And for answer to the fifth of said interrogatories say, that according to their best impression, information and remembrance, the notes first made by the said Frederick J. A. Starr, at Sun Prairie, to the complainants, and which were subsequently ascertained to be incorrect, as hereinbefore mentioned and set forth, were of the same tenor and date, and payable at the same time, as the notes subsequently made by the said Starr to the complainants, and substituted in their place, as hereinbefore more particularly and at large set forth. And these complainants, further answering to the seventh of said interrogatories, say, that they do not know, and cannot state, whether the said defendant, Adelaide Starr, was ever made acquainted with the fact that the notes first given by the said Frederick J. A. Starr to the complainants, as hereinbefore stated and set forth, were subsequently given up, and the notes described in complainants' bill substituted in their place, as hereinbefore more fully and at large has been made to appear. And these complainants, further answering to the eighth of said interrogatories, say, that at the time of the giving up of the notes, and the execution of the other notes in their stead to the complainants, as hereinbefore set forth, the complainants, Goodrich, Strong, Russell and I. Solmer, then a clerk in the store of the said Strong, Crapo & Russell, and also the defendant Frederick J. A. Starr, were present, and perhaps some others, but who else, or whether any one except those mentioned and designated, these complainants cannot and do not remember. And these complainants, further answering to the ninth and last of said interrogatories, say, that the whole busi-

ness, from the commencement to the conclusion of the arrange-
ment and settlement between the complainants and the said
Frederick J. A. Starr, was transacted by the said Goodrich for
and on behalf of the said Williams, Bonnell & Co., and the said
Strong for and on behalf of the said Strong, Crapo & Russell."

The separate answer of Edwin H. Goodrich, James Bonnell
and Henry Williams, to the interrogatories of Frederick J. A.
Starr, Adelaide Starr and Elijah Rowley, defendants:.

"To the first interrogatory these complainants answer, that
neither of the complainants was present when the said mortgage
was executed; that said mortgage was drawn up by the com-
plainant Goodrich, in the store of said Starr, at Sun Prairie, and
was taken therefrom by said Starr, as he said to his house, and
shortly afterward brought back, executed by himself and wife,
and acknowledged by them, as in said bill set forth, and was
delivered as hereinafter set forth. To the second interrogatory,
these complainants answer that there were four notes executed
by the said Starr to the complainants, which said notes were exe-
cuted and delivered at the time, in the manner, and under the cir-
cumstances hereinafter set forth, to wit: the said Starr had, for
some time previous to the execution of said notes and mortgage,
been indebted unto the complainants, Williams, Bonnell and
Goodrich, who were partners under the firm name of Williams,
Bonnell & Co., and to the complainants, Strong, Crapo & Russell,
who were partners under the firm name of Strong, Crapo & Rus-
sell, for goods sold and money advanced to said Starr; and about
the time of the giving of the said notes and mortgage, the said
complainants became satisfied that the said Starr was very much
involved, and perhaps insolvent; and the complainant Goodrich,
for the firm of Williams, Bonnell & Co., and the complainant
Strong, for the firm of Strong, Crapo & Russell, went to Sun
Prairie for the purpose of collecting or securing the claims which
their respective firms held against said Starr; that they found
him in consultation with some of his friends and creditors con-
cerning his affairs, acquainted him with their business, and, after
an interview, the said Starr professed to adjust their claims
against him, by giving his notes for the amount thereof, and to

secure the payment of said notes by a mortgage upon the premises described in the mortgage mentioned in the bill of complaint in this cause, which premises he represented were clear from incumbrances, except a certain mortgage executed by himself and wife, to one Desire Barrell; that said Strong and Goodrich were willing to take the notes so secured for the claims of their respective firms, but were unwilling to take the representations of said Starr as to the title to said premises. It was therefore agreed that said Starr should, with his wife, execute said mortgage, and that said Starr should return with said Goodrich and Strong to Madison, and if said premises should be unincumbered, except as represented by said Starr, and the title satisfactory, that said Strong and Goodrich should take such notes and mortgage in discharge of their claims against said Starr. Whereupon the said Goodrich filled out the mortgage in said bill mentioned, which said mortgage was by said Starr taken from the store, and was brought back executed by himself and wife as aforesaid. The said Starr, at the same time, executed his four promissory notes, one for the sum of three hundred dollars, due presently, and three others, the exact amount of which these complainants cannot set forth, which said notes, as these complainants believe, were made payable at a future day, but at what particular day these complainants cannot state, nor can they state positively that said notes were payable at a future date; that the said notes were executed late at night, and the said Starr represented that it was too late for him to return with them to Madison that night, but that said Goodrich and Strong might take said notes and mortgage, return to Madison, and examine the records as to the title and incumbrances; that he would come into Madison in the morning, and should the title prove satisfactory, consummate the agreement; and then and there delivered said notes and mortgage to said Strong and Goodrich, who received the same for that purpose, and no other, and returned to Madison late at night; that, on examination, they found the title as stated by said Starr; but on submitting the notes and mortgage to counsel, found that there was a mistake in filling up the warrant of attorney annexed to the notes; that the next

morning, when the said Starr came to Madison, they told him of the mistake made in the notes, and they then drew the notes mentioned in said bill of complaint, which the said Starr executed, and delivered them, with the said mortgage to the said Goodrich and Strong, at the store of Strong, Crapo & Russell; that thereupon the said Goodrich receipted the account of Williams, Bonnell & Co., and gave up the notes which were due that firm, and the said Strong receipted the account of Strong, Crapo & Russell, and they then and there surrendered or destroyed the said first-mentioned notes; that the said first-mentioned notes were never delivered to the said Goodrich and Strong as the absolute property of their respective firms, nor for any other purpose than as hereinbefore stated, and that they were never paid; that no receipt or credit was ever given said Starr for said first-mentioned notes and mortgage, nor was any credit given for the mortgage until after they had examined the records at Madison, and settled with the said Starr in the store of Strong, Crapo & Russell, and until the delivery of the notes and mortgage mentioned in the said bill of complaint.

"To the third, fourth, fifth and sixth interrogatories, these complainants answer, as they have already answered, in their answer to the second interrogatory. To the seventh interrogatory, these complainants answer, that the said Adelaide was not, to the knowledge of these complainants, informed of the contents of any of the notes hereinbefore mentioned; that she certainly never saw them. To the eighth interrogatory, they answer, that they cannot answer further than they have already answered."

After the hearing, the Circuit Court rendered the usual decree of foreclosure and sale, from which the defendant Frederick J. A. Starr appealed.

*H. E. Frink*, for the complainant.

*Abbott, Clark & Coit*, for the defendant.

*By the Court*, SMITH, J. This is an appeal from a final decree

of foreclosure and sale, made in the Circuit Court of Dane county, upon a mortgage executed by F. J. A. Starr and Adelaide, his wife, to the complainant. The bill is in the usual form, setting out the interests of the complainants, and representing one of the defendants as a prior mortgagee.

The defendant Starr, in his answer, admits that he did, on the said 9th day of April, A. D. 1855, execute the mortgage mentioned in the complainants' bill of complaint, to secure four notes to the complainants, or some of them, payable, not as in said bill alleged, but some weeks, perhaps, after the said date (the exact time of payment he had forgotten, but believed one was payable one day after date, and the others in three, five and six months); and to secure these notes he executed the said mortgage. But he denies that there was anything due on said notes, or either of them, and avers that he had paid, satisfied and discharged all of the notes for the security of which the mortgage was given; and that on the 10th day of April, A. D. 1855, said notes were given up by the complainants, to him, to be canceled, and were then and there canceled and destroyed; and admits that the mortgaged premises were occupied by him as his homestead.

Adelaide S. Starr in her answer avers, that she has no remembrance or knowledge of ever joining with her husband, F. J. A. Starr, in the execution of said mortgage, or of any deed or mortgage to the complainants, or either of them; that at the time of the date of the said mortgage, she was in a very low and feeble state, both of body and mind, from sickness, and if she executed the mortgage at all, she was entirely unconscious of what she was doing, and charges knowledge of her condition upon the complainants; and that her signature was obtained by fraud of the complainants. She also denies that there was anything due upon the notes, for the security of which the mortgage was given, but that the same had been given up to the said F. J. A. Starr to be canceled, and were canceled; and that thereby the mortgage was discharged, and also alleges that the mortgaged premises were occupied as the homestead of the family.

The defendant Rowley answered, setting up his prior mort-

gage for some $400 for part of the purchase money of the premises, assigned to him by Desire Barrell. The bill was taken as confessed as to the other defendants.

It will be observed, that the only party defendant before this court is Frederick ʾJ. A. Starr, he being the only one who has appealed from the decree of the Circuit Court, and his rights and equities only can now be considered. From the fact that the other defendants did not appeal, we are to presume that they are satisfied with the decree of the court below; at all events it is only by appeal that this court can obtain jurisdiction of them as parties.

How, then, stands the case in regard to the appellant F. J. A. Starr? His defence must be adjudicated according to the allegations in his answer, and the proofs brought to sustain them. No rule in equity is more thoroughly established than that the *allegata* and the *probata* must correspond. The proofs cannot avail as a defence, unless they be in support of some allegation in the answer. Now the answer of the appellant amounts to payment. He says that the notes for the security of which the mortgage was executed, were by him fully paid, satisfied and discharged, and delivered up to him by the complainants, to be canceled. If this does not amount to an averment of payment, at least it is an accord and satisfaction. It is matter in avoidance, not responsive to the bill, and must be substantiated by affirmative proof.

The only proof introduced, or relied upon to sustain these averments in the answer of the appellant, is contained in the answers of the complainants to the interrogatories propounded · by the defendants to the complainants, which are in substance, that on the evening of the 9th day of April, 1855, the said Starr executed four notes to the complainants, amounting to the sum mentioned in the condition of the mortgage, with warrants of attorney attached, at Sun Prairie; that on the next day at Madison, it was ascertained that a mistake had occurred in the warrants of attorney annexed to said notes; whereupon the appellant executed new notes for the same amount, and the first notes were canceled and destroyed. One of the complainants says,

that the first notes, according to his best impression, information and remembrance, were of the same tenor and date, and were payable at the same time as the notes subsequently made and substituted for them. The other complainants in reference to this subject say, that one of the four notes was payable presently, and the other at a future day, but at what particular day they cannot state, nor can they state positively that they were payable at a future date; that after the mistake in the warrant of attorney was corrected by making the new notes, the complainants receipted their respective amounts against the appellant, and gave up the first notes, and the appellant delivered the mortgage and the last four notes above mentioned, so corrected and substituted.

We think this evidence comes far short of sustaining the answer of the appellant. He does not directly aver that the mortgage *debt* was paid and discharged, but such is undoubtedly the inference which he intended should be drawn from his language. But even if he intended to convey the idea that the mortgage debt was paid, the proof offered by no means warrants it. The notes given were but the evidence of the debt which the mortgage was given to secure. The condition of the mortgage is, that the mortgagor shall pay or cause to be paid, the sum of $1,546.26 according to the condition of four promissory notes, &c. The substituting of other notes for the same amount, was not a discharge of the debt. The new notes took the place of the old ones, leaving the indebtedness unaffected by the transaction. It was only substituting one instrument of evidence for another, without at all affecting the security. *Hilliard on Mort.* 307, 311, 312; *Morse vs. Clayton*, 13 *S. & M.* 373; *Davis vs. Maynard*, 9 *Mass.* 242; 31 *Maine*, 246; *Burdett vs. Clary*, 8 *B. Monroe*, 287; 3 *Barb. Ch. Rep.* 293; 16 *Pick.* 22; 10 *N. H.* 218; 14 *Conn. Rep.* 334.

As between the immediate parties, it was competent for them to change the time and mode of payment, and still retain the mortgage security. 1 *Hilliard on Mort.* 309, 310, 311; *Hugennin vs. Starkweather*, 5 *Gilman*, 492; *McCormick vs. Digley*, 8 *Blackf. Rep.* 99.

But we do not think that the answers of the complainants to the interrogatories propounded to them, satisfactorily show that the notes which were substituted were different in their tenor or effect from the first notes. One testifies that, according to his best impression, information and belief, they were of the same date and tenor, and payable at the same time. The other thinks that some of them were payable at a future day, but could not tell what day, nor was he positive that they were payable at a future day. The notes in suit are payable one day after date. We cannot say that these vague statements ought to be held sufficient to establish the fact of an alteration in the terms of the notes substituted, from those of the notes first drawn. On the contrary, the probability remains that the motive for alteration, or rather substitution, was, the defect discovered in the accompanying warrants of attorney.

This disposes of the defence set up in his answer by the defendant F. J. A. Starr. It was, however, objected by his counsel, on the hearing in this court, to the introduction of the notes in evidence, on the ground of erasures therein, which were not explained in proof. Whether or not the objection was made below, we are not certainly informed, but we are satisfied that the objection is untenable. It is true that any material erasure or interlineation in a note vitiates it, unless explained. But the erasure here is immaterial. It is apparent, upon inspection, that the words stricken out in the printed form were to make room for the name of one of the payers, and to change the printed form, which was to "order," to "bearer." It is apparent that it was done at the time of making the notes, and explains itself.

It was also objected to the mortgage that it was not under seal. We are of the opinion that the printed letters [L. S.] inclosed in brackets or parentheses, in the usual place of a seal, is a sufficient devise under the provisions of our statute to answer the purpose of a seal, and that the party prefixing his signature to such a device upon an instrument purporting to be under his hand and seal, adopts the same as his seal. *R. S.*, *ch.* 55, § 4; *ch.* 59, § 34.

In regard to the defendant Adelaide Starr, it is sufficient to say that she has not appealed from the decree of the court below, and hence has not placed her rights and equities, if any she may have had, within our power to protect or control. But even if she had done so, or even if the defence set up by her could be made available to F. J. A. Starr, there would then be found the same difficulty in the way of relief, because of the want of proof to sustain her answer. The matters contained in her answer which are relied upon as a defence, are not responsive to the bill, except as regards the single allegation that the mortgaged premises were occupied as a homestead. Therefore, to render them available, they must be proved. There is no proof of her illness, of her unconsciousness—not a vestige of evidence to impeach her signature, or her acknowledgment of the mortgage; and the same remarks as were made before as regards the substitution of one set of notes for another, apply equally to this defendant.

It is true the complainants aver, and the defendants Starr and wife admit, that the premises were occupied as a homestead. Hence their mortgage would not be valid, even as against the husband, without the signature of the wife. But that signature they exhibit, and it is for those who would impeach the mortgage to show that her signature was obtained by undue means, or under circumstances that would vitiate it. This, as before remarked, they have failed to do.

It is suggested that the decree of the court below does not sufficiently protect Rowley, the prior mortgagee, and had he appealed, the decree would be so modified as to him as to secure beyond any contingency the payment of his mortgage. The complainants, however, offer now to redeem his mortgage, which will accomplish all that any modification of the decree could have done, even if he had prosecuted an appeal.

Decree of the court below affirmed with costs.