HASELTINE and another vs. DONAHUE and another.

QUIT-CLAIM DEED OF COUNTY. *(1) Orders of county board construed.*
*(2) Form of deed by county clerk.*
APPEAL TO SUPREME COURT. *(3) Record sufficient to bring up question of validity of deed.*

1. A county board of supervisors, by order of record in 1862, authorized their clerk to convey by quit-claim deed any land held by the county by tax deed, to any person who would pay the taxes and charges on it. By a like order in 1869, it directed that all forfeited lands owned by the county should be sold for cash: pine land at its estimated value, and hard wood and farming lands at 75 cents per acre. By a like order in 1870, it directed that all lands held by the county on tax deeds, and not then taxed, might be sold or redeemed at 75 cents per acre. *Held,* that the three orders, being *in pari materia,* should be construed together, and that, after the date of the last, the clerk had authority, subject to the terms and conditions expressed in them, to convey any lands of the county held under tax deeds, whether such deeds were made *before* or *after* the orders were made.

2. In the clerk's deeds in this case (made in 1870), the county is named as grantor; the conclusion is: "In witness whereof the said party of the first part has hereunto set *its* hand and seal," etc.; to the clerk's signature is appended his official title, followed by a printed bracket with the word " seal " printed therein; the official seal of the county is affixed; and the certificate of acknowledgment states that, on etc., came A. B., " as clerk of the board of supervisors, the above named grantor, and acknowledged the execution," etc. *Held,* that the execution is a substantial compliance with sec. 7, ch. 13, R. S.; that the deeds must be held to be sealed with the private seal of the clerk, if that is necessary *(Williams v. Starr,* 5 Wis., 534); that it was not necessary to recite in them the authority of the clerk; and that the use of *its* for *his,* if an informality, is unimportant.

3. Where a nonsuit was entered expressly on the ground that said deeds (on which plaintiff relied) were "insufficient," and the bill of exceptions, though not containing all the evidence, preserves enough of it to show that the deeds were material, and that the clerk had authority to execute them, an exception to the order for a nonsuit is sufficient to bring up the question whether the deeds were valid.

APPEAL from the Circuit Court for *Marathon* County.
Action to recover damages for wrongfully cutting and car-

rying away from the lands of the plaintiffs, described in the complaint, a certain quantity of pine timber. The answer denies that the plaintiffs are the owners of the lands from which the timber was taken, and alleges that the same were and are owned by one Lancaster, and that the timber was taken therefrom by the defendants, pursuant to a license from Lancaster.

It appeared on the trial that these lands (which are situated in Marathon county) were returned and sold for the nonpayment of taxes levied upon them for the year 1863, and were bid in by the county. After the time for redemption had expired — the lands remaining unredeemed, — the usual tax deed thereof was executed to the county, pursuant to an order of the county board of supervisors. Such order was made December 14, 1867, and the tax deed was executed March 17, 1868, and recorded on the 23d of the same month.

The plaintiffs gave in evidence two quit-claim deeds of the lands described in the complaint, purporting to have been executed by the county of Marathon to the plaintiff *Haseltine*. One of these deeds bears date October 26, 1870, and the other, December 12th in the same year. In both deeds, Marathon county is named as grantor, or party of the first part; and both conclude as follows: "In witness whereof, the said party of the first part has hereunto set *its* hand and seal, the day and year first above written. B. RINGLE, Clerk of the County Board of Supervisors, for Marathon County." The official seal of the county is affixed, and immediately following the name of the clerk is a printed bracket with the word "seal" printed therein. The certificate of each acknowledgment is, that on the day therein named, before the notary who took such acknowledgment, came "B. Ringle, as clerk of the board of supervisors, the above named grantor, and acknowledged the execution of the foregoing deed, freely and voluntarily, for the uses and purposes therein mentioned."

To show the authority of the clerk to execute such deeds,

the plaintiffs read in evidence three orders of the board of supervisors of Marathon county, as follows:

"November 6, 1862.    Ordered that the clerk of the board of supervisors be, and is hereby, authorized to convey, by quit-claim deed, any land .held by Marathon county by tax deed, to any person or persons who will pay the taxes and charges on the same.

"December 30, 1869.    Ordered, that all forfeited lands owned by the county, shall be sold for cash: pine timber land at its estimated value, and hard wood and farming lands at seventy-five cents per acre.

"August 18, 1870.    Ordered, that all lands held by the county on tax deeds, and not now taxed, may be sold or redeemed at seventy-five cents per acre."

At the close of the testimony, the court nonsuited the plaintiffs, on the express ground of the insufficiency of the quit-claim deeds so executed to the plaintiff *Haseltine;* and, thereupon judgment of nonsuit, and for costs, was rendered against the plaintiffs.

From such judgment the plaintiffs appealed.

For the appellants, a brief was filed by *James & Crosby*, and the cause was argued orally by *W. F. Vilas*.    They argued that deeds are to be construed favorably, and as near the apparent intention of the parties as possible, consistently with the rules of law ( *Vilas v. Reynolds*, 6 Wis., 223); that the intention is to be gathered from the entire deed, and, when the intention is clear, too minute stress ought not to be laid on the strict meaning of words (4 Cruise's Digest, tit. 32, ch. 19; *Allen v. Holton*, 20 Pick., 458); that the acknowledgment helps the deed by implication, and may be inquired into for that purpose ( *Wilson v. Henry*, 40 Wis., 594); that the deeds here in question appear, by an application of these principles, to have been executed by the county through its authorized agent; that, in reference to such a conveyance, the county must be treated like a natural person, and its contracts con-

strued in the same manner and with like effect (*Touchard v. Touchard*, 5 Cal., 306); that the same rules of strict construction which are applicable to tax deeds, are not to be applied to deeds like those in question (Dwarris on Stats., 176); that any clerical mistakes not affecting a substantial right would not vitiate them (*Vilas v. Reynolds, supra*); that it was the duty of the clerk to execute the deeds in the name of the county as his principal, in order to bind the county (Story on Agency, 5th ed., 147–8; *Wood v. Goodridge*, 6 Cush., 120); and that the seals were sufficient (*Williams v. Starr*, 5 Wis., 534).

For the respondents, a brief was filed by *Silverthorn & Hurley*, and the cause was argued orally by *Mr. Hurley*. They contended, 1. That as the bill of exceptions was not certified to contain all the evidence that was material to the question presented to the circuit court, it must be presumed here that the proofs were such as to warrant the decision of that court. *Smith v. Lavin*, 8 Wis., 265; *Demier v. Durand*, 15 id., 580; *Kelley v. Kelley*, 20 id., 443; *Cutler v. Hurlburt*, 29 id., 152; *Greening v. Bishop*, 39 id., 552. 2. That the order of the board of supervisors dated November 6, 1862, conferred no authority on the clerk to sell or convey the lands here in question, because it contemplated only lands held by the county by tax deed at the time when the order was passed, and these lands were not then so held. 3. That the deeds were void because not executed as required by statute. There is nothing in them to show by what authority they were executed. The statute under which they ought to have been executed (ch. 145, Laws of 1867; Tay. Stats., 430, § 147), required that they should be executed by the clerk or treasurer, "under *his* hand and seal," for the county; and the deed, to be valid, must have the private seal of the clerk, and not the official seal of the county (*Eaton v. North*, 20 Wis., 449). But the testimonial clause in each of these deeds recites that the grantor, the county, "has hereunto set *its* hand and seal,"

and the official seal of the county is affixed; and this nega-
tives the idea that the clerk had any intention to adopt as his
seal the word "seal" printed on the blank which he used.
A naked power to sell must be pursued strictly in respect
both to its object and to the forms prescribed in it; and a
deed under such a power, exhibiting a defect in either partic-
ular, is void both in law and in equity.  *Waldron v. McComb,*
1 Hill, 111; Blackw. T. T. (5th ed.), 33, 508.

LYON, J.   It is not denied that the absolute title in fee to
the lands from which the timber in question was taken, was
vested by the tax deed in the county of Marathon; and the
controlling question in the case is, whether the quit-claim deeds
passed such title to the plaintiff *Haseltine.*   The learned coun-
sel for the defendants maintains, with much ingenuity of argu-
ment, that the question must be answered in the negative, on
either of two grounds: 1. That the clerk of the board of su-
pervisors had no authority to execute such deeds; or 2. That
they are not executed as required by statute.

There are two statutes, under either of which a valid convey-
ance of the land may be made on behalf of the county.   These
are sec. 7, ch. 13, R. S., and sec. 12, ch. 22, Laws of 1859,
as amended by ch. 145, Laws of 1867.   These statutes are as
follows:

"Sec. 7.   The property of the several counties shall be held
by the clerks of the boards of supervisors of such counties, in the
name of the county, and shall be disposed of by the said clerks,
under the direction of the said county board.   The board of
supervisors of each county may, by their order of record, direct
the clerk of said board to sell and convey any real estate of
their county, not donated for any special purpose; and all
deeds made on behalf of said county, by the clerk of the board
of supervisors of said county, under his hand and official seal,
and duly acknowledged by him, shall be sufficient to convey
all the rights, title, interest and estate, which the county may

then have in and to the lands so conveyed." (Tay. Stats., 292, § 7.)

" Sec. 12. The board of supervisors of any county may, by an order to be entered in the records, authorize the clerk of their board, or the county treasurer of their county, to sell and assign the tax certificates issued for lands bid off for such county, and also to sell and convey by deed, duly executed and delivered by such clerk or treasurer under his hand and seal for such county, any such lands for which a deed of re-lease has been executed to the same, as provided in the pre-ceding section." (Tay. Stats., 430, § 147.)

We think the clerk had ample authority from the board of supervisors to execute the quit-claim deeds. The three orders of 1862, 1869 and 1870, are *in pari materia*, and should be construed together; and, so construed, we cannot doubt they confer power on the clerk, subject to the terms and conditions therein expressed, to convey any lands of the county held un-der tax deeds, whether the tax deeds were issued before or after the orders were made. In other words, it is a general power, applicable to all lands so held by the county, no mat-ter when acquired, and will continue in force until revoked by the authority which granted it.

As to the mode of execution of the quit-claim deeds, we think they are executed in substantial compliance with sec. 7, above quoted. In substance and effect, they are "made on be-half of the county by the clerk of the board of supervisors thereof, under his hand and official seal, and duly acknowl-edged by him;" and he had the requisite authority to make and execute them. It is quite immaterial that the pronoun *its*, instead of *his*, is employed in the testatum clauses of the deeds. This informality (if it is an informality) is of no im-portance. Neither was it necessary to recite in the deeds the authority of the clerk to execute them. Moreover, if the pri-vate seal of the clerk is essential to the validity of the deeds, it must be held, on the authority of *Williams v. Starr*, 5 Wis.,

534, that these deeds are sealed with the private seal of the clerk. We have no difficulty in holding that the quit-claim deeds were effectual to pass the title to the lands described therein, to the plaintiff *Haseltine.*

The bill of exceptions shows affirmatively that it does not contain all of the testimony; and the only exception of the defendant preserved therein is to the ruling of the court granting the nonsuit. For the reason that we have not all of the testimony before us, it is argued that the exception is unavailable — that there may have been evidence which rendered the nonsuit entirely proper even though the quit-claim deeds are in due form and were executed pursuant to proper authority.

We think this point is not well taken. The deeds were at first received in evidence, but were subsequently ruled out on the express ground that they were insufficient. The nonsuit was the necessary result of the ruling. We understand the ruling of the court to have been, that the deeds were insufficient on their face to convey any title to the lands. Such is the plain, obvious import of the term *insufficiency,* as used by the learned circuit judge. Such being the ruling, and that being the main question sought to be raised by the appeal, it was only necessary to preserve enough of the evidence to show the materiality of the deeds, and that the clerk had authority to execute them. Had the nonsuit been granted generally, that is, without any statement in the record showing the grounds thereof, a very different question would be presented. Many of the cases cited on behalf of the defendants would then be applicable.

Where, as in this case, it is desired to review a single question of law involved in the rulings of the circuit court, it is worse than useless to stuff a bill of exceptions with all the details of the trial, which have no bearing upon that question. As an example, take the present case. There was probably a large amount of testimony given on the trial as to the amount

and value of the timber in controversy. None of this testimony has the slightest bearing upon the questions raised on this appeal. Had it been inserted in the bill of exceptions, the costs of the litigation would have been increased, and the time of the court consumed to no purpose whatever.

The plaintiffs desired the opinion of this court on the sufficiency of the quit-claim deeds, and, to obtain that opinion, they preserved the deeds in the bill of exceptions, with the ruling of the circuit court that they were insufficient, and enough of the evidence to show the materiality of the deeds to their case. This is all that is necessary, and hence, all that the rules of correct practice require.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.